William J. JENNINGS, Jr., Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 20A03–8607–CR–213.

Court of Appeals of Indiana, Third District.

Feb. 9, 1987.

Rehearing Denied Mar. 25, 1987.

Thomas A. Murto, Murto & Holbrook, Goshen, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

After a jury trial, William J. Jennings was convicted of driving while intoxicated, a class D felony,[1] and driving while license suspended, a class A misdemeanor.[2] He raises the following issues:

(1) whether the evidence was sufficient to show Jennings had a prior conviction for driving while intoxicated;

(2) whether the evidence was sufficient to show Jennings's license was suspended;

(3) whether the evidence was sufficient to show Jennings was intoxicated;

(4) whether the prosecutor impermissibly commented on Jennings's failure to testify at trial;

(5) whether the prosecutor impermissibly argued her personal beliefs, placing Jennings in a position of great peril;

(6) whether the trial court erred by allowing the arresting officer to read from an "implied consent" card, and

(7) whether the trial court erred by reading to the jury preliminary instruction 8, which involved the jury's power to decide the law and the facts.

We affirm.

On the evening of February 20, 1985, Officer Thomas Love of the Elkhart City Police Department was on routine patrol. He watched as a car driven by Jennings ran a stop sign. Officer Love pursued the car, turned on his lights, and, when the car pulled over, pulled in behind it.

Officer Love saw that Jennings had trouble getting his door open. As Jennings got out of his car, Officer Love smelled the strong odor of alcohol. When asked to produce his driver's license, Jennings responded that he did not have one. Jennings's eyes were bloodshot and his speech was slurred. Officer Love administered field sobriety tests, which Jennings failed.

When Officer Love asked Jennings to take a breathalyzer test Jennings initially agreed; on the way to the police station, however, Jennings said he would not take the test because he knew he would fail.

Later that same evening, Officer Love communicated with the State Police regarding the status of Jennings's license. Officer Love was informed that Jennings's license was, at that time, suspended.

I.

*Prior Conviction*

Jennings argues that the evidence is insufficient to sustain his conviction for driving while intoxicated as a class D felony. Such a conviction requires a finding that the defendant has previously been convicted for driving while intoxicated. Jennings attacks the jury's finding that he had such a prior conviction. Thus, his attack is to the sufficiency of evidence to support the present class D felony conviction.

Our well-established standard of review allows us to consider only the evidence favorable to the State, together with reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt, we must affirm. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

The evidence favorable to the State is as follows. First, the State introduced a certified copy of Jennings's driving record from the Bureau of Motor Vehicles (BMV). The relevant portion of the record is as follows:

---

1. Ind.Code 9–11–2–3.

2. Ind.Code 9–1–4–52.

| Date of Action | Points | Description Of Action | Court No. Termination | Docket No. Case No. | Document Reference Number |
|---|---|---|---|---|---|
| 05/11/82 | | Susp Closed | | C5766 | B9999860 |
| 07/29/82 | MS | DWI-Liquor | 202001 | 24380 | V577697 |
| 07/29/82 | | Susp S/R DWI | 07/29/83 | C12367 | C0582590 |
| 11/26/83 | | Susp Closed | | 20003 | C2127860 |
| 01/20/84 | | Susp S/R PCF | 07/20/84 | 202002 | P8373380 |
| 01/25/84 | | Susp S/R J | | J73575 | C3239330 |
| 11/02/84 | | Susp Closed | | C4464 | C5028800 |
| 11/02/84 | | Susp Closed | | C5296 | C5028810 |
| 11/02/84 | | Susp Closed | | 202002 | C5028820 |
| 12/19/84 | MS8* | Drv Whl Intx | 202002 | 3875 | W400954 |
| 01/04/85 | COM | Record Reviewed DK | | | C5378050 |
| 01/20/84 | | Susp S/R DWI | 04/20/84 | C2425 | C5575850 |
| 02/21/85 | 08* | Current Status—Suspended | | | |

Jennings does not challenge the admission of the certified copy of his driving record. He does assert, however, that the driving record is insufficient *by itself* to support the conclusion that he had a prior conviction for driving while intoxicated.

Jennings's point is well-taken. In our opinion on petition for rehearing in *Oller v. State* (1984), Ind.App., 472 N.E.2d 610, we held that BMV records, without more, were ambiguous and could not support the conclusion that the defendant had such a prior conviction. This was true notwithstanding Ind.Code 9–11–4–14(b), which provides:

(b) In a proceeding under this article: (1) A certified copy of a person's driving record obtained from the Bureau; or (2) A certified copy of a court record concerning a previous conviction; constitutes prima facie evidence that the person has a previous conviction of operating while intoxicated. [IC 9–11–4–14, as added by P.L.143–1983, § 1; P.L.107–1985, § 18.]

■ At first glance, *Oller* appears inconsistent with IC 9–11–4–14(b), which purports to make a BMV driving record, no matter what its contents, prima facie evidence of a prior conviction of operating while intoxicated. We note, however, that such an interpretation of IC 9–11–4–14(b) would make even a driving record with only one entry—"current status: clear"—prima facie evidence of a conviction for driving while intoxicated. We are unwilling here, as we were in *Oller*, to give IC 9–11–4–14(b) such an interpretation. The BMV driving record must unambiguously show that the defendant has previously been convicted of driving while intoxicated. See e.g., *Warner v. State* (1980), Ind.App., 406 N.E.2d 971, 976.

■ Here, however, the BMV report is not the only evidence which supports the conclusion that Jennings had a prior conviction for driving while intoxicated. The record also contains testimony by a probation officer who had supervised Jennings on a probation resulting from a conviction for driving under the influence of alcohol. The probation officer testified that Jennings pleaded guilty to the prior charge on December 19, 1984, in Elkhart County court. This is the same date as is reflected in the BMV report.

■ Evidence is relevant if it tends to prove a material fact or if it makes an inference more probable than it would be absent the evidence. *Data Processing v. L.H. Smith Oil Corp.* (1986), Ind.App., 492 N.E.2d 314, 321. The probation officer's testimony tends to prove, or makes more probable than not, that Jennings was previously convicted of driving under the influence of alcohol. The testimony is substan-

tial, probative evidence. Thus, there is evidence in the record, in addition to the BMV driving record, which supports Jennings's conviction for driving while intoxicated as a class D felony. We need not decide whether the probation officer's testimony would be, by itself, sufficient to sustain Jennings's present conviction; it is clear that the BMV report, together with the probation officer's testimony, constitute substantial evidence of probative value from which the jury could reasonably infer guilt beyond a reasonable doubt. Therefore, we must affirm.

## II.

### Driving with Suspended License

Jennings also attacks his conviction for driving with a suspended license, a violation of IC 9-1-4-52. He argues the evidence was insufficient to show that, at the time of his arrest, his license was suspended.

In support of his argument, Jennings cites *Jones v. State* (1985), Ind.App., 482 N.E.2d 746. In *Jones,* the only evidence of the defendant's driving history was this excerpt from the BMV record:

| Date of Action | Points | Description Of Action | Court No. Termination | Docket No. Case No. | Document Reference Number |
|---|---|---|---|---|---|
| 06/14/82 | | Susp S/R LS | 12/14/82 | 010442 | C0424900 |
| 08/18/82 | | Susp S/R ACC | 06/12/84 | 02010 | C0597790 |
| 06/12/84 | | Susp Closed | | 02010 | C4116950 |
| 08/14/84 | * | Current Status—Suspended | | | |

482 N.E.2d at 746. Judge Garrard made the following observation:

> The only record before the court indicates a suspension on June 14, 1982 that terminated December 14, 1982 and a suspension August 18, 1982 which was "closed" on June 12, 1984. From that it cannot be inferred beyond a reasonable doubt that Jones' license was suspended on June 29, 1984. Moreover, the bare conclusion "current status—suspended" listing August 14, 1984 as the "date of action," adds nothing to the evidentiary record concerning Jones' status on June 29, 1984, the alleged date of the offense. It may be that Jones' license was suspended on June 29, 1984, but that fact does not exist as a reasonable inference (as contrasted from conjecture or speculation) from the evidence produced at trial.

*Id.*

*Jones* is distinguishable. Here the arrest occurred on February 20, 1985. The only portion of Jennings's driving record introduced into evidence in this portion of the bifurcated proceeding is as follows:

02/21/85 08* Current Status—suspended

Thus, unlike the driving record in *Jones,* Jennings's driving record does not contain a notation that a previous suspension had been lifted.

■ Jennings's record differs from Jones's in another way: In *Jones,* a notation "CURRENT STATUS—SUSPENDED" was dated August 14, 1984, one and one half months *after* the arrest date of June 29, 1984. In the present case, Jennings's driving record shows his license was suspended as of the day immediately following his arrest. The inference is thus more reasonable in the present case that Jennings's license was suspended on February 20, 1985.

Other evidence in the record also supports the conclusion that Jennings's license was suspended on February 20, 1985. After Jennings got out of the car on the night of his arrest, he was asked by Officer Love to produce a driver's license. Jennings stated that he did not have one. While this statement is ambiguous, it does support the inference that Jennings's license was suspended on February 20, 1985.

Finally, Officer Love testified that he communicated with a post of the Indiana State Police on the evening of Jennings's arrest. After checking Jennings's records, the State Police informed Officer Love that Jennings's license was, as of February 20, 1985, suspended.

When taken together, the foregoing evidence supports a reasonable inference that Jennings's driver's license was suspended on February 20, 1985. Thus, the evidence was sufficient to sustain his conviction.

### III.

#### Intoxication

Jennings next challenges the sufficiency of evidence to support his conviction for driving while intoxicated, a violation of Indiana Code 9–11–2–2. Specifically, Jennings asserts the evidence is insufficient to show he was intoxicated.

■ The evidence favorable to the State is that Jennings exuded the strong odor of alcohol, had bloodshot eyes, swayed on his feet, slurred his speech, and failed the finger-to-nose and heel-to-toe sobriety tests. Jennings also refused to take a breathalyzer test, stating "I know I'm going to fail the test."

The evidence is sufficient to support the conclusion that Jennings was intoxicated. Thus, the evidence is sufficient to sustain his conviction.

### IV.

#### Defendant's Failure to Testify

■ Jennings next argues the trial court committed fundamental error by allowing the prosecutor to comment in final argument on Jennings's failure to testify at trial. Jennings couches his challenge in terms of fundamental error to avoid his waiver of the issue, which would ordinarily follow from his failure to object at trial to the prosecutor's comments.

Jennings's challenge does not require extended treatment. All of the prosecutor's comments referred to by Jennings involve his statements or silence during or immediately after his arrest. We have carefully reviewed the prosecutor's argument, and we do not believe it alludes to Jennings's decision not to testify at trial. We find no error.

### V.

#### Other Prosecutorial Misconduct

Jennings asserts that the prosecutor "argued her personal beliefs of the interpretation of the evidence." Jennings argues that the prosecutor commented on what she believed to be "normal" driving, and speculated on why Jennings refused to take a breathalyzer test.

Jennings correctly refers us to *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, in which our Indiana Supreme Court set forth the standard for reviewing a charge of prosecutorial misconduct:

1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. *See Swope v. State,* (1975) [263] Ind. [148], 325 N.E.2d 193.

2. The Court then considers whether the misconduct, under all the circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." *White v. State,* (1971) 257 Ind. 64, 78, 272 N.E.2d 312, 320, followed in *Warner v. State,* (1976) [265] Ind. [262], 354 N.E.2d 178, 54 Ind.Dec. 481; *Rufer v. State,* (1976) [264] Ind. [258], 342 N.E.2d 856; *Turczi v. State,* (1973) 261 Ind. 273, 301 N.E.2d 752; *Robinson v. State,* (1973) 260 Ind. 517, 297 N.E.2d 409. The "grave peril" standard does not require the Court to find that the misconduct determined the outcome of the trial. *White, supra,* at 272 N.E.2d 319–20. This is the same standard which *White* mandates trial

courts to observe in ruling on mistrial motions.

3. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Swope v. State, supra.*

4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result. *Robinson v. State,* (1973) 260 Ind. 517, 297 N.E.2d 409; *Garrett v. State,* (1973) [157] Ind. App. [426], 300 N.E.2d 696.

355 N.E.2d at 848.

■ In the present case, the challenged comments do not run afoul of *Maldonado.* First, the prosecutor did not engage in misconduct. She suggested that certain inferences were reasonable given the evidence in the record. We see no indication that the prosecutor implied to the jury that she possessed knowledge concerning the defendant's guilt which was unavailable to the jury.

Second, Jennings fails to show how the prosecutor's comments placed him in a position of great peril. We disagree with Jennings that the comments "would lead the jury to believe they had only heard half the story." It strains belief to imagine the jury thought that the prosecutor possessed "inside knowledge" as to what constitutes normal driving, or why one might refuse a breathalyzer test. The jury was free either to make the inferences suggested by the prosecutor or to reject them. Jennings shows no error.

## VI.

### Implied Consent

Next, Jennings argues the Court erred by allowing Officer Love to read from a card entitled "Implied Consent." The card contained information which Officer Love read to Jennings before placing him under arrest.

■ Jennings has waived any error on this point. At trial, Jennings objected to the evidence by urging that Officer Love had no personal knowledge as to whether the information on the implied consent card was an accurate statement of the law. Jennings thus challenged the foundation for admission of Officer Love's testimony.

On appeal, however, Jennings claims the information on the card was impermissible hearsay. When a specific objection to the admission of evidence is made at trial, any other possible objections are waived. *Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303, 312. Thus, a defendant is not permitted to give one reason for an objection at trial and another on appeal. *Ralston v. State* (1980), Ind.App., 412 N.E.2d 239, 247.

## VII.

### Instructions

Finally, Jennings asserts the trial court erred by reading preliminary instruction 8, which Jennings asserts misled the jury as to its power to decide the law and the facts of the case. Preliminary instruction 8 reads as follows:

Since this is a criminal case, the Constitution of the State of Indiana makes you the judges of both the law and the facts. Although this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard or ignore the law as it exists. The instructions of the Court are the best source of the law applicable to this case.

Jennings's argument is without merit. Our Indiana Supreme Court addressed this issue in *Beavers v. State* (1957), 236 Ind. 549, 141 N.E.2d 118. The Court stated:

Although the constitution gives the jury the right to determine the law in criminal cases, it does not follow, nor is it true, that it is an "exclusive" right. It is a coordinate right to be exercised with that of the judge or court. Neither does it follow, nor is it true, that the jury is the

judge of the law at every step in the proceedings. Neither does it follow, nor is it true, that it is totally irresponsible in determining the law, and has no duty in the exercise of that right to seek the law from the best and most reliable source available, namely the court. A jury may not cast aside such advice or instructions lightly, and should be so instructed in view of their general lack of such knowledge. A consciousness of their responsibility, oath and duty in that respect is an aid to the proper performance of their constitutional duty. Nevertheless upon final analysis after being so informed and cautioned the jury has the power to go its own way, and determine the law for itself when it renders a verdict. If the defendant is found guilty its determination of the law, if in error, will be overridden by the court's better understanding of the law in the interest of justice and constitutional law.

141 N.E.2d at 125.

We would also direct Jennings's appellate counsel to *Cox v. State* (1985), Ind., 475 N.E.2d 664, in which he participated, and in which the Indiana Supreme Court reaffirmed the position it announced in *Beavers, supra.*

Jennings has shown no error. The judgment of the trial court is affirmed.

GARRARD, P.J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I cannot wholly agree with the reasoning of the majority opinion in affirming Jennings' conviction for driving while intoxicated as a Class D felony and his conviction for driving with a suspended license. Both convictions rest upon BMV records, which as the majority notes, were found to be ambiguous in *Oller v. State* (1984), Ind. App., 469 N.E.2d 1227, *reh. denied*, 472 N.E.2d 610, 611, and upon hearsay testimony.

Jennings' conviction for driving while intoxicated enhanced to a Class D felony is based upon the BMV record and the testimony by a probation officer, admitted over Jennings' objection, that Jennings was previously convicted of driving while intoxicated. The probation officer admitted that she was not present at Jennings' prior conviction. The majority reasons that while the BMV record alone would not sustain the conviction, the testimony of the probation officer was relevant and renders "more probable than not" the conclusion that Jennings had a previous conviction. However, the hearsay evidence coupled with the BMV abstract do not constitute evidence with probative value sufficient to demonstrate a previous conviction beyond a reasonable doubt.

In a line of cases wherein a prior conviction was introduced for the purpose of enhancing a defendant's sentence pursuant to the habitual criminal statute, IND.CODE § 35–50–2–8, our Supreme Court has determined that introduction of properly certified *court* records constitutes the best method of proving prior convictions. In *Morgan v. State* (1982), Ind., 440 N.E.2d 1087, 1090–1091, the Court stated:

"Evidence, to be sufficient in a criminal cause, must have such probative value that from it a reasonable trier of fact could infer that which it is offered to prove, beyond a reasonable doubt. *Glover v. State*, [(1970) 253 Ind. 536, 255 N.E.2d 657], *supra*. A judgment of conviction is basically a written court record of a judicial proceeding. The record's existence and content in turn is reflected in a host of other official documents. *Collins v. State*, (1981) [275] Ind. [86], 415 N.E.2d 46. The requirement of the law that such records be kept reflects the monumental interest of society in the maintenance of accurate and reliable evidence of such matter. To countenance proof of such an important matter as a prior conviction in a criminal trial upon parol evidence alone from witnesses who have observed the judicial proceedings, resulting in it, is counter to our entire perspective on the subject. We, therefore, hold that parol evidence standing alone is insufficient evidence of the fact

of prior convictions in the absence of a showing of the unavailability of the proper certified records. Here, no such records were introduced, and there was no indication that the State was unable to produce them. The additional thirty year term imposed under Ind.Code § 35–50–2–8 cannot stand on the evidence submitted, and defendant's conviction on that charge must be reversed."

440 N.E.2d at 1090–1091; *accord Driver v. State* (1984), Ind., 467 N.E.2d 1186, 1188. *But cf. Foster v. State* (1985), Ind., 484 N.E.2d 965, 966 (was not fundamental error to prove habitual offender status through unobjected to testimony of admissions to probation officer and certified copies of court records identified by probation officer).

In the present case the State made no showing that court records of the conviction were unavailable. Enhancement of Jennings' driving while intoxicated conviction to a Class D felony based solely on a BMV abstract and hearsay testimony allows substantial room for error in a criminal sanction.

Jennings conviction for driving with a suspended license is also based upon a BMV abstract and hearsay testimony. I do not agree that *Jones v. State* (1985), Ind. App., 482 N.E.2d 746 is distinguishable from the present case. The abstract introduced in the proceedings against Jennings was less informative than that in *Jones*. In Jennings' case the abstract was redacted to one line asserting that Jennings' license was suspended on the day after his arrest. The abstract is no more reliable because its date is in closer proximity to Jennings' arrest than were the arrest and abstract in *Jones*. A temporal lapse of one day or one and one-half months makes no difference when the evidence reflects the status of the licenses *after* the arrests.

The majority considers Jennings' statement that he did not have a license further evidence of the suspended status of Jennings' license. The statement is susceptible of several interpretations. Jennings may not have had his license with him when he was stopped or as noted in *Jones, supra*, 482 N.E.2d at 747, n. 1, Jennings' license may have been considered suspended because he had not paid a reinstatement fee. In either of the two examples Jennings would have been guilty of driving without a valid license, a Class C infraction. Thus, the statement could not be considered evidence that Jennings' license was suspended.

The final bit of evidence concerning Jennings' conviction for driving with a suspended license, considered by the majority, is the officer's testimony that someone at the Indiana State Police post reported over the radio that Jennings' license was suspended.[1] This testimony was received without objection by Jennings. Normally, unobjected to hearsay testimony may be considered for its probative value. *See, Busam v. State* (1983), Ind.App., 445 N.E.2d 118, 122. *See also, Turentine; Ingram v. State* (1979), 179 Ind.App. 161, 164, 384 N.E.2d 1119, 1121–1122 (unobjected to hearsay afforded same probative effect as otherwise competent evidence of similar import). Giving the hearsay in this instance its probative value would net a quantum of proof far below that necessary to support a criminal conviction.[2] The evidence did not include any explanation of the circumstances, who determined or how it was determined that Jennings' license was suspended. No conclusive proof of the status of Jennings' license was presented.

For the foregoing reasons I dissent.

---

1. This information would form the basis for probable cause to arrest, but does not constitute evidence sufficient to support a criminal conviction.

2. While not binding upon this Court it is instructive that other jurisdictions have concluded that unobjected to hearsay may not, standing alone, support a criminal conviction. *State v. McGann* (1982), 132 Ariz. 296, 645 P.2d 811; *State v. Allien* (1978), La., 366 So.2d 1308.